UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Faimul Alam, Shan Anand, W.H. and M.K., | Civil Docket No. 1:16-cv-00251-DLI-RLM |
| Plaintiffs, | Date of Service: February 16, 2016 |
| -against- | |
| American Airlines Group, Inc., American Airlines, Inc., Republic Airlines, Inc., Republic Airways Holdings, Inc., Envoy Air, Inc. and American Eagle, Inc., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS AMERICAN AIRLINES GROUP INC., AMERICAN AIRLINES, INC., ENVOY AIR INC., AND AMERICAN EAGLE AIRLINES, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**


## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. PLAINTIFFS' ALLEGATIONS .......... 2

III. ARGUMENT .......... 4

A. Plaintiffs' Complaint Fails to State a Claim Because All of Their Claims Are Preempted by the Montreal Convention .......... 5

B. Plaintiffs' Complaint Fails to State a Claim Because the Alleged Discrimination Occurred Outside the United States and None of the Statutes Plaintiffs Rely upon Have Extraterritorial Application .......... 10

IV. CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Baah v. Virgin Atl. Airways Ltd.*,
   473 F. Supp. 2d 591 (S.D.N.Y. 2007) ............................................................................... 8

*Christel v. AMR Corp.*,
   222 F. Supp. 2d 335 (E.D.N.Y. 2002) ............................................................................ 13

*Curto v. Med. World Commc'ns, Inc.*,
   388 F. Supp. 2d 101 (E.D.N.Y. 2005) ............................................................................ 13

*Dennis v. Delta Air Lines*,
   No. 10 CV 973, 2011 WL 4543491 (E.D.N.Y. Aug. 18, 2011) ..................................... 12

*EEOC v. Arabian Am. Oil Co.*,
   499 U.S. 244 (1991) ....................................................................................................... 10

*Ehrlich v. Am. Airlines, Inc.*,
   360 F.3d 366 (2d Cir. 2004) ......................................................................................... 5, 7

*El Al Isr. Airlines, Ltd. v. Tseng*,
   525 U.S. 155 (1999) ...................................................................................................... 5, 6

*Hammell v. Banque Paribas*,
   780 F. Supp. 196 (S.D.N.Y. 1991) ................................................................................. 12

*King v. Am. Airlines, Inc.*,
   284 F.3d 352 (2d Cir. 2002) ..................................................................................... passim

*Kripalani v. AMR Corp.*,
   No. 12 Civ. 5609, 2013 WL 1822777 (S.D.N.Y. Apr. 30, 2013) ..................................... 9

*Molefe v. KLM Royal Dutch Airline*,
   602 F. Supp. 2d 485 (S.D.N.Y. 2008) .............................................................................. 9

*Mutlu v. JetBlue Airways Corp.*,
   08 Civ. 4887, 2009 U.S. Dist. LEXIS 60164 (S.D.N.Y. Mar. 31, 2009) ....................... 12

*Ofori-Tenkorang v. AIG, Inc.*,
   460 F.3d 296 (2d Cir. 2006) ............................................................................... 2, 11, 12

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013) .............................................................................................. 4

**STATUTES**

42 U.S.C. § 1981 ..................................................................................................... passim

## TABLE OF AUTHORITIES
### (continued)

**Page**

42 U.S.C. § 2000d .................................................................................................. 1, 9, 10, 11

Federal Aviation Act, 49 U.S.C. § 40120 ................................................................ 12

Federal Aviation Act, 49 U.S.C. § 40127 ........................................................... 1, 10, 12

New York Civil Rights Law 1909, Article 4, § 40 ............................................. 1, 10, 12

New York Executive Law § 296 ........................................................................ 1, 10, 12

**OTHER AUTHORITIES**

Convention for the Unification of Certain Rules Relating to International
    Transportation by Air, Oct. 12, 1929, 49 Stat. 3000 (1934), 137 L.N.T.S. 11,
    reprinted in 49 U.S.C. § 40105 note ......................................................................... 5

S. Exec. Rep. 108-8 (2003) ............................................................................................. 8

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 2

I.      INTRODUCTION

Defendants American Airlines Group Inc., American Airlines, Inc., Envoy Air Inc., and American Eagle Airlines, Inc., (the "American Defendants"), move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Plaintiffs are four men who traveled by air from New York to Canada for a short trip. After boarding the aircraft in Canada for their return flight to New York, they were asked to deplane by a flight attendant. Plaintiffs were then allowed to board the next flight to New York. In this lawsuit, Plaintiffs baldly assert that the Captain of the aircraft removed them because of their race—despite failing to allege a single fact suggesting discriminatory animus on the part of the Captain, nor even alleging that the Captain had seen them or was otherwise aware of their race when he made the decision. Based on their delay until the next flight and alleged emotional distress, Plaintiffs purport to assert five claims for discrimination based on 42 U.S.C. § 1981, 42 U.S.C. § 2000d, the Federal Aviation Act, New York Executive Law § 296, and New York Civil Rights Law 1909. Plaintiffs each seek damages of $6 million for each of their five purported causes of action—or $30 million per plaintiff.

Plaintiffs' claims are not cognizable and must be dismissed based on controlling Second Circuit authority for two reasons. First, Plaintiffs' claims are all preempted by the Montreal Convention. The "cardinal purpose" of the Montreal Convention, previously known as the Warsaw Convention, "is to achieve uniformity of rules governing claims arising from international air transportation" by "creat[ing] a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the court of international transportation." *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356-57 (2d Cir. 2002) (quotation and citation omitted). In *King*, just as here, ticketed passengers who were not permitted to fly on an international flight sued for racial discrimination. The District Court held that the Warsaw Convention barred the

plaintiffs' claims and granted the airline's motion for judgment on the pleadings. The Second Circuit affirmed. As Justice Sotomayor, then a Circuit Judge, explained, "every court that has addressed the issue of whether discrimination claims are preempted by the Warsaw [now called Montreal] Convention . . . has reached a similar conclusion." *Id.* at 361 (citation omitted). The result must also be the same here.

Second, unlike in *King* where the alleged discrimination occurred on an international flight departing the United States, the acts of which Plaintiffs complain all occurred in Canada. The five federal and state statutes on which Plaintiffs' claims are based, however, do not have extraterritorial application outside the country—as also specifically confirmed by the Second Circuit. *See, e.g.*, *Ofori-Tenkorang v. AIG, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006) (holding that Section 1981 claims cannot be brought based on conduct that occurred "beyond the territorial jurisdiction of the United States."). Thus, Plaintiffs' Complaint fails to state a claim for this reason as well.

For these reasons, and as explained below, Plaintiffs' Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.    PLAINTIFFS' ALLEGATIONS

Plaintiffs Faimul Alam, Shan Anand, and two individuals identified only by their initials, W.H. and M.K. (collectively, "Plaintiffs") make the following allegations in their Complaint (ECF No. 1) ("Compl.").[1] Plaintiffs are four men between 23 and 29 years of age. (Compl. ¶¶ 9-11.) Three are Muslim and of Bengali or Syrian descent. (*Id.* ¶¶ 9-10.) The fourth is Sikh and of Punjabi descent. (*Id.* ¶ 11.)

---

[1] Plaintiffs' allegations are assumed to be true solely for purposes of this motion to dismiss.

Plaintiffs (along with two friends identified as John Doe 1 and John Doe 2) planned a trip together to Canada. (*Id.* ¶ 19.) Plaintiffs booked their trips separately. (*Id.* ¶ 20.) M.K., W.H., John Doe 1, and John Doe 2 traveled to Toronto, Canada on the morning of December 5, 2015 together. (*Id.* ¶ 21.) Anand traveled to Canada on the evening of December 5, 2015 alone, and Alam traveled to Canada on December 6, 2015 alone. (*Id.*)

Plaintiffs Anand and Alam originally booked a later return flight than W.H., M.K., John Doe 1 and John Doe 2, but paid a fee to change their return flight to that of their friends. (*Id.* ¶ 24.) On December 8, 2015, Plaintiffs, along with John Does 1 and 2, arrived at Pearson Airport in Toronto, Canada, checked in their luggage, cleared customs and security, and then proceeded to the gate to await boarding of their flight. (*Id.* ¶ 25.) While waiting, Plaintiffs W.H. and M.K. paid $70.00 to upgrade from coach to business class. (*Id.* ¶ 26.)

Plaintiffs, along with John Does 1 and 2 and the other passengers on the flight boarded American Airlines Flight AA44718 from Canada to New York. (*Id.* ¶¶ 24, 27.) W.H. was seated in the first seat of business class; M.K. was seated in seat three of business class; Alam and Anand were seated in row six; and John Does 1 and 2 were seated in row 17 at the rear of the aircraft. (*Id.* ¶ 28.) W.H. received a pillow and blanket and lay down to sleep while M.K. also fell asleep. (*Id.* ¶ 29.) Minutes later, a flight attendant, "appearing nervous and scared," demanded that they exit the plane. (*Id.* ¶¶ 29-32.)[2] After Plaintiffs Alam and Anand watched W.H. and M.K. exit the plane, the flight attendant "rushed to Alam and Anand and demanded they exit the aircraft in a hostile manner." (*Id.* ¶¶ 34-36.) Passengers aboard Flight AA44718 "made bigoted and racist comments" either to or regarding Plaintiffs, "stared in fear and hate at"

---

[2] In this motion, the American Defendants replace Plaintiffs' references to "stewardesses" with the term "flight attendants."

them, and "held their children and belongings close to their person as if something was going to happen." (*Id.* ¶¶ 35-36.)

In accordance with the flight attendant's demands, Plaintiffs exited the aircraft. (*Id.* ¶¶ 33, 39.) An unidentified "Agent of Defendant" explained to Plaintiffs that "the crew members and specifically the captain felt uneasy and uncomfortable with their presence on the flight and as such, refused to fly unless they were removed from the flight." (*Id.* ¶ 47.) Flight AA44718 departed for New York without Plaintiffs, and thereafter Plaintiffs returned to New York on the next flight. (*Id.* ¶ 54.)

Based on these allegations, Plaintiffs purport to assert five causes of action for discrimination under New York and federal statutes against Republic Airways Holdings, Inc., Republic Airlines, Inc., American Airlines Group Inc., American Airlines, Inc., Envoy Air Inc., and American Eagle Airlines, Inc.[3]

## III. ARGUMENT

"The sufficiency of a complaint to state a claim is a matter of law." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (citation omitted). In ruling on a Rule 12(b)(6) motion to dismiss, the Court must "accept as true all factual allegations and draw from them all reasonable inferences" but is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Id.* (citation omitted). A Rule 12(b)(6) motion may be granted where "it does not appear to [the Court] that Congress intended [a statute] to permit recovery." *Id.* at 97. That is the case here.

---

[3] American Eagle Airlines, Inc. (incorrectly named as American Eagle, Inc. in the caption) was renamed Envoy Air Inc. in April 2014.

### A. Plaintiffs' Complaint Fails to State a Claim Because All of Their Claims Are Preempted by the Montreal Convention.

Because Plaintiffs' claims are all based on their removal from an international flight, they are barred by the Montreal Convention. The Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000 (1934), 137 L.N.T.S. 11, reprinted in 49 U.S.C. § 40105 note—commonly known as the "Warsaw Convention"—was originally created in "1929 in order to foster the growth of the nascent commercial airline industry." *King*, 284 F.3d at 356 (citation omitted). The Warsaw Convention was amended numerous times over the following 70 years, culminating in Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air—commonly known as the "Montreal Convention"—"which became effective in the United States in March of 1999." *Id.* at 357. "The Montreal Convention is the product of an effort by the International Civil Aviation Organization . . . to reform the Warsaw Convention so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists." *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004) (quotations and citation omitted). The Montreal Convention "unifies and replaces the system of liability that derives from the Warsaw Convention." *Id.* (citation omitted).

The Montreal Convention, like its predecessor the Warsaw Convention, "is designed to protect air carriers against catastrophic, crippling liability by . . . restricting the types of claims that may be brought against carriers." *King*, 284 F.3d at 357 (citation omitted). As the Supreme Court has explained, the Convention's "cardinal purpose" is "to achieve uniformity of rules governing claims arising from international air transportation." *El Al Isr. Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169, 671-72 (1999) (quotations and citation omitted). "Uniformity requires,

however, that passengers be denied access to the profusion of remedies that may exist under the laws of a particular country, so that they must bring their claims under the terms of the Convention or not at all." *King*, 284 F.3d at 357 (citation omitted). "Recognizing this, the Supreme Court in *Tseng* held that the Convention's preemptive effect on local law extends to all causes of action for injuries to persons or baggage suffered in the course of international airline transportation." *Id.* (citing *Tseng*, 525 U.S. at 174-76).

In *King*, the Second Circuit held these principles preclude passengers on international flights from bringing discrimination claims. There, "[t]he Kings, an African American couple possessing confirmed tickets for a flight from Miami to the Grand Bahamas, alleged that defendants bumped them from an overbooked flight because of their race." *Id.* at 355. In that case, "all the white passengers, including those who did not have confirmed reservations, were allowed to board" the flight. *Id.* "Nonetheless, after the Kings had been permitted to board the vehicle that was to transport the passengers from the terminal to the aircraft, agents of the defendants confiscated their boarding passes and informed the Kings that they were being 'bumped' from the flight involuntarily." *Id.* The Kings alleged "that they had been racially discriminated against in violation of 42 U.S.C. § 1981, the Federal Aviation Act ('FAA'), 49 U.S.C. § 41310(a), and various other state and federal laws." *Id.*

The Second Circuit explained that "[t]he Kings' discrimination claim is preempted by the Warsaw Convention if the events giving rise to the claim occurred in the course of the

international 'carriage of passengers and baggage.'" *Id.* at 358.[4] The terms of the Convention "describe in further detail when an activity is part of the carriage of passengers and baggage." *Id.* A claimed injury occurs in the course of the carriage of passengers if it "took place on board the aircraft or in the course of any of the operations of embarking or disembarking." *Id.* The Second Circuit "h[e]ld that the events in question occurred in the course of embarkation, and that the Kings' action therefore falls within the substantive scope of Article 17" of the Warsaw Convention. *Id.* (citation omitted). Specifically, "[a]t the time they were bumped from their flight, the Kings had already checked in for their flight, received their boarding passes, and boarded the vehicle that was to transport them from the terminal to the aircraft." *Id.* at 359. "The Kings therefore suffered their injury while 'in the course of [one of] the operations of embarking' within the meaning of Article 17." *Id.* (alteration in original). Thus, the Kings' claims were preempted.

In *King*, the Second Circuit expressly considered and rejected the argument that discrimination claims should somehow be excluded from the preemptive scope of the Convention. "The Kings resist this conclusion. They would have us distinguish between civil rights claims and actions sounding in tort, and hold that the latter fall within the ambit of the Warsaw Convention while the former do not." *Id.* at 360. The Second Circuit declined to create such an exception: "Were we to adopt the Kings' interpretation, we would eviscerate the uniformity that is the animating purpose behind the Convention." *Id.* at 361. "As *Tseng* makes clear, the scope of the Convention is not dependent on the legal theory pled nor on the nature of

---

[4] Although the Montreal Convention had replaced the Warsaw Convention by the time of the Second Circuit's decision in *King*, the Warsaw Convention was still in effect at the time of the underlying events at issue in that case. Thus, the Second Circuit in *King* applied the Warsaw Convention, although it also discusses the subsequently enacted Montreal Convention. *See generally Ehrlich*, 360 F.3d at 373 ("a particular treaty does not govern conduct that took place before the treaty entered into force.") (citation omitted).

the harm suffered." *Id.* (citation omitted). "Notably, every court that has addressed the issue of whether discrimination claims are preempted by the Warsaw Convention post-*Tseng* has reached a similar conclusion." *Id.* (collecting cases).[5]

While *King* applied the predecessor of the Montreal Convention, the Warsaw Convention, the Second Circuit recognized that the result would not only be the same—but would actually be strengthened—under the Montreal Convention. The Warsaw Convention stated that "[i]n the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention." *Id.* at 357. "The most significant change [of the Montreal Convention] was the elimination of the confusing 'cases covered by' phrase and the substitution of more inclusive language: In the carriage of passengers and baggage, any action for damages, *however founded*, can only be brought subject to the conditions and limits set out in this Convention." *Id.* (emphasis in original); *see also Baah v. Virgin Atl. Airways Ltd.*, 473 F. Supp. 2d 591, 596-97 (S.D.N.Y. 2007) (explaining that decisions interpreting the Warsaw Convention continue to apply in cases under the Montreal Convention: "In the nearly seventy years that the Warsaw Convention has been in effect, a large body of judicial precedent has been established in the United States. The negotiators of the Montreal Convention intended to preserve these precedents.") (quoting S. Exec. Rep. 108-8, at 3 (2003)).

---

[5] The Second Circuit further clarified that the Warsaw Convention preempted plaintiffs' discrimination claims even though the Warsaw Convention provides no remedy for emotional distress. Although by its terms the Convention "limits recovery to passengers who have sustained 'bodily injury,' the Supreme Court in *Tseng* made clear that this restriction on liability affects neither the analysis of the substantive scope of the provision or its preemptive effect." *Id.* at 359 (citation omitted). "Similarly, although the Kings would not be able to maintain an action under Article 17 for non-bodily injuries stemming from the discriminatory bumping, their claim is preempted if it arose from events that took place during embarkation." *Id.*; *see also id.* at 361 n.5 ("the preemptive scope of the Convention . . . is often broader than the scope of the remedies the Convention provides.").

Courts within the Second Circuit uniformly follow *King* in dismissing discrimination claims arising out of international air travel under the Montreal Convention. For example, in *Kripalani v. AMR Corp.*, No. 12 Civ. 5609, 2013 WL 1822777, at *2 (S.D.N.Y. Apr. 30, 2013), the court granted defendants' motion to dismiss discrimination claims brought by a passenger under 42 U.S.C. § 1981, 42 U.S.C. § 2000d, the New York State Human Rights Law, and the New York City Human Rights Law because "[t]he Montreal Convention preempts any state law causes of action relating to personal injuries sustained in the course of international air travel." "[P]laintiff's tort, discrimination, human rights, and Constitutional claims all arise from physical and emotional injuries suffered during international flight and are therefore preempted by the Convention." *Id.* at *3 (citing *King*, 285 F.3d at 358-60).

Similarly, in *Molefe v. KLM Royal Dutch Airline*, 602 F. Supp. 2d 485 (S.D.N.Y. 2008), the court granted defendants' motion for judgment on the pleadings and dismissed the plaintiff's discrimination claims under state and federal law based on the Montreal Convention. Quoting *King*, the Court held "that a 'discrimination claim is preempted by the Warsaw Convention if the events giving rise to the claim occurred in the course of the international "carriage of passengers and baggage," regardless of whether the original or the amended Article 24 controls.'" *Id.* at 495 (citation omitted). "Article 24 of the Warsaw Convention preempted the application of federal and state law to air transportation cases: 'In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention.'" *Id.* at 494. "The same language, with even more emphatic additions, is set forth in the Montreal Convention." *Id.* Thus, the Court held that the plaintiff's discrimination claims were preempted by the Montreal Convention.

The result must be the same here.  Plaintiffs assert five discrimination claims under federal and state laws:  42 U.S.C. § 1981, 42 U.S.C. § 2000d, the Federal Aviation Act, New York Executive Law § 296, and New York Civil Rights Law 1909.  Each of these claims arises from the same factual allegation that Plaintiffs were removed from Flight AA44718.  (Compl. ¶¶ 24, 32, 39, 57, 59, 70, 75, 84, 88, 93.)  Plaintiffs specifically allege that Flight AA44718 was an international flight—to New York from Canada.  (*Id.* ¶ 24.)  Plaintiffs also allege that they were initially permitted to board Flight AA44718 and that they were then removed from the flight before takeoff.  (*Id.* ¶¶ 27, 29, 32, 34, 36.)  Thus, Plaintiffs' claims unquestionably arise from an alleged injury that "took place on board the aircraft or in the course of any of the operations of embarking or disembarking."  *King*, 248 F.3d at 358.  Accordingly, Plaintiffs' claims are "plainly preempted" by the Montreal Convention.  *Id.* at 359 n.4.

**B.      Plaintiffs' Complaint Fails to State a Claim Because the Alleged Discrimination Occurred Outside the United States and None of the Statutes Plaintiffs Rely upon Have Extraterritorial Application.**

Plaintiffs' five purported claims also all fail because Plaintiffs sue for alleged discrimination that occurred in Canada, but the statutes on which their claims are based do not have extraterritorial application.  "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."  *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) ("*Aramco*") (quotations and citation omitted).  "We assume that Congress legislates against the backdrop of the presumption against extraterritoriality."  *Id.* (citations and internal quotation marks omitted).  "Congress' awareness of the need to make a clear statement that a statute applies overseas is amply demonstrated by the numerous occasions on which it has expressly legislated the extraterritorial application of a statute."  *Id.* at 258 (citation omitted).  Applying

-10-

this standard, none of the statutes on which Plaintiffs' claims are based has any extraterritorial application outside of the United States. Thus, they must all be dismissed for this reason as well.

Section 1981. In *Ofori-Tenkorang v. AIG, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006), the Second Circuit held that 42 U.S.C. § 1981 has no extraterritorial application: "Based on the text and legislative history of Section 1981, we conclude, as a matter of first impression in this Circuit, that Congress has not extended the coverage of Section 1981 beyond the territorial jurisdiction of the United States." Importantly, "Section 1981's territorial limitation is defined by the location of the subject of the discrimination." *Id.* at 304. Thus, because the alleged discrimination occurred in Canada, Plaintiffs have failed to state a Section 1981 claim.[6]

Title VI. 42 U.S.C. § 2000d similarly has no extraterritorial application. Section 2000d provides that "[n]o person *in the United States* shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." (Emphasis added.) Notably, in concluding that Section 1981 had no extraterritorial application, the Second Circuit expressly relied on the fact that the statute contained the language "within the jurisdiction of the United States." *Ofori-Tenkorang*, 460 F.3d at 301 ("Far from evincing any intent on the part of Congress to apply the statute beyond our borders, the language of Section 1981 unambiguously confirms the opposite.") (quotations, citation, and alterations omitted). The result must be the same here. By limiting Title VI to persons "in the United States," Congress unambiguously confirmed that the statute has no extraterritorial application.

---

[6] It does not matter where Plaintiffs purchased their tickets. As the Second Circuit held: "We can find nothing in the statutory language indicating Congress's intent to allow those outside the territorial jurisdiction of the United States to raise Section 1981 claims merely because the . . . contract was initially formed in the United States." *Id.* at 303-04. Instead, "Section 1981's territorial limitation is defined by the location of the subject of the discrimination." *Id.* at 304.

-11-

<u>Federal Aviation Act</u>. 49 U.S.C. § 40127 also has no extraterritorial application. Section 40127 is located in Part A of Subtitle VII of Title 49 of the United States Code. Section 40120, which is located in the same Part, provides: "The President may extend . . . the application of this part to outside the United States when—(1) an international arrangement gives the United States Government authority to make the extension; and (2) the President decides the extension is in the national interest." No such extension exists here. Thus, by the express terms of the statute, Section 40127 does not apply outside of the United States.[7]

<u>New York Human Rights Law</u>. New York Executive Law § 296 also has no application outside the United States. As the court explained in *Hammell v. Banque Paribas*, 780 F. Supp. 196, 199 (S.D.N.Y. 1991), "the New York Human Rights law contains no clear indication of its applicability to acts occurring outside the United States." Thus, the Court concluded that Section 296 did not apply to conduct occurring in a foreign country and dismissed the plaintiff's claim. *Id.* at 202.

<u>New York Civil Rights Law</u>. The New York Civil Rights Law similarly has no application outside the United States. Article 4, Section 40 provides that "[a]ll persons *within the jurisdiction of this state* shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement." (Emphasis added.) As with Section 1981 and Title VI, such language "unambiguously confirms" that the statute applies only to conduct *within the jurisdiction of this state*—not in any foreign country. *Ofori-Tenkorang*, 460 F.3d at 301.

---

[7] Plaintiffs' third cause of action also fails because the Federal Aviation Act does not create a private right of action. *See, e.g.*, *Dennis v. Delta Air Lines*, No. 10 CV 973, 2011 WL 4543491, at *8 (E.D.N.Y. Aug. 18, 2011) ("49 U.S.C. § 40127(a) does not confer a private right of action") (citation omitted); *Mutlu v. JetBlue Airways Corp.*, 08 Civ. 4887, 2009 U.S. Dist. LEXIS 60164, at *13 (S.D.N.Y. Mar. 31, 2009) (granting motion to dismiss with prejudice because Section 40127 does not confer a private right of action).

Plaintiffs' two claims based on New York state law would fail even if the allegedly discriminatory conduct took place in another state— much less outside the United States. "It is well settled that the NYSHRL does not provide a cause of action to a New York resident for discriminatory acts committed outside of New York by a foreign corporation." *Curto v. Med. World Commc'ns, Inc.*, 388 F. Supp. 2d 101, 106 (E.D.N.Y. 2005). As Plaintiffs allege, none of the American Defendants is a New York company. (Compl. ¶¶ 12-17.)[8]

## IV.    CONCLUSION

Plaintiffs were not removed from Flight AA44718 for a discriminatory reason—nor does Plaintiffs' Complaint contain a single fact allegation suggesting they were. But even assuming for the sake of argument that Plaintiffs could somehow demonstrate that they were removed for a discriminatory reason, Plaintiffs' Complaint must still be dismissed for failure to state a claim. As the Second Circuit has made expressly clear, because Plaintiffs' claims arise from their removal from an international flight, the Montreal Convention preempts all of their claims. And because the alleged discrimination occurred in Canada, Plaintiffs' claims fail for the additional reason that none of the laws they rely upon have extraterritorial application. Accordingly, the American Defendants respectfully request that this Court dismiss Plaintiffs' Complaint for failure to state a claim.

---

[8] While Plaintiffs allege that the Captain had them removed, Plaintiffs have failed to allege a single fact suggesting discriminatory animus on the part of the Captain, nor have they even alleged that the Captain had seen them or was aware of their race at the time he made his decision to remove them. Plaintiffs thus fail to state a discrimination claim for this reason as well. *See*, *e.g.*, *Christel v. AMR Corp.*, 222 F. Supp. 2d 335, 340 (E.D.N.Y. 2002) ("A captain of an airplane is entitled without further inquiry to rely upon a flight attendant's representations that a conflict with a passenger might distract the flight attendant from performing his or her safety-related duties.") (citation omitted).

Dated: New York, New York
        February 16, 2016

O'MELVENY & MYERS LLP

By: /s/ *Mark W. Robertson*
       Mark W. Robertson

Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
E-mail: mrobertson@omm.com

*Attorney for Defendants*
*American Airlines Group Inc.,*
*American Airlines, Inc., Envoy Air Inc.,*
*and American Eagle Airlines, Inc.*