UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
FAIMUL ALAM, SHAN ANAND,  :
W.H., and M.K.,  :
  :
      Plaintiffs,  :
  :  **MEMORANDUM & ORDER**
  -against-  :  16-CV-00251 (DLI) (ST)
  :
AMERICAN AIRLINES GROUP, INC.,  :
AMERICAN AIRLINES, INC., REPUBLIC  :
AIRWAYS HOLDINGS INC.,  :
ENVOY AIR, INC., AMERICAN EAGLE, INC.,  :
and REPUBLIC AIRLINES, INC.,  :
  :
      Defendants.  :
-------------------------------------------------------------------x

**DORA L. IRIZARRY, Chief U.S. District Judge:**

  On January 18, 2016, Faimul Alam, Shan Anand, W.H., and M.K.,[1] (collectively, "Plaintiffs") commenced the instant action against American Airlines Group, Inc., American Airlines, Inc., Republic Airlines, Inc., Republic Airways Holdings, Inc., Envoy Air, Inc., and American Eagle, Inc., (collectively, "Defendants"). Plaintiffs' Amended Complaint alleges that Defendants discriminated against them on the basis of their race in violation of 42 U.S.C. § 1981 ("§ 1981"), Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, the Federal Aviation Act ("FAA"), 49 U.S.C. § 40127(a), New York State Human Rights Law ("NYHRL"), New York Executive Law § 296, and Article 4 of the New York Civil Rights Law ("NYCRL"), N.Y. Civ. Rights Law § 40. (*See generally* Amended Complaint ("Am. Compl."), Dkt. Entry No. 14.) Additionally, Plaintiffs assert claims for breach of contract, implied covenant of good faith and fair dealing, and negligence and gross negligence. (*Id.*)

---

[1] It is not clear to the Court why Plaintiffs W.H. and M.K. are identified only by initials, particularly since neither is a minor child. However, as this action is dismissed in its entirety, the Court does not find it necessary to amend the caption or complaint to include their full names.

Before the Court is appearing defendants', American Airlines Group, Inc., American Airlines, Inc., Envoy Air, Inc., and American Eagle, Inc. (collectively, "Moving Defendants"), motion to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Mem. of L. in Supp. of Defs'. Mot. to Dismiss ("Defs'. Mem."), Dkt. Entry No. 16.) Plaintiffs oppose. (*See* Pl.s' Mem. of L. in Opp. ("Pl.s' Opp'n"), Dkt. Entry No. 17.) For the reasons set forth below, Moving Defendants' motion is granted in its entirety.

Republic Airways Holdings, Inc. and Republic Airlines, Inc. ("Republic Defendants") have not appeared in this action. As Plaintiffs never filed an affidavit of service as to these defendants, the Court cannot determine whether the Republic Defendants were served properly. Moreover, Plaintiffs never moved for a certificate of default or default judgment against Republic Defendants. However, for the same reasons that this action is dismissed against Moving Defendants, it is dismissed against Republic Defendants.

## BACKGROUND

Plaintiffs are four men between the ages of 23-29. (Am. Compl. ¶¶ 8-11.) Both Faimul Alam ("Alam") and M. K. are Muslim and of Bengali descent, while W.K. is a Muslim of Syrian descent. (*Id.* ¶¶ 8-10.) Shan Anand ("Anand") is Sikh and of Punjabi descent. (*Id.* ¶ 11.) On December 5, 2015, Plaintiffs along with their two friends, John Doe 1 and John Doe 2[2], planned a trip from New York City's LaGuardia Airport to Canada to celebrate John Doe 1's 20th birthday. (*Id.* ¶¶ 19-20.) M.K., W.H., John Doe 1, and John Doe 2 departed onboard an aircraft from New York City's LaGuardia Airport to Canada on the morning of December 5, 2015, while Anand left

---

[2] Here too, it is not clear why these two individuals are not identified by their true names or even initials. It does not appear that they are minors. However, as this action is dismissed, no amendment to the caption or complaint is necessary.

2

that evening and Alam the next day to meet them. (*Id.* ¶¶ 20-21.) The group booked flights departing from Toronto, Canada and arriving in New York City on December 8, 2015. (*Id.* ¶ 22.) Although initially booking a different return flight than the rest of the group, Anand and Alam paid a fee to change their flight to that of their friends. (*Id.* ¶¶ 23-24, 27.)

On December 8, 2015, Plaintiffs, along with John Does 1 and 2, arrived at Pearson Airport in Toronto, Canada where they printed their boarding passes, checked their luggage, cleared customs and security, and proceeded to the gate where they boarded American Airlines Flight No. AA44718. (*Id.* ¶¶ 27-28.) W.H. sat in the first seat of business class; M.K. sat in seat three of business class; Alam and Anand sat in row six of the coach section, and John Does 1 and 2 sat in row seventeen near the rear of the aircraft. (*Id.* ¶¶ 30-31.) After boarding, W.H. and M.K. settled into their seats and fell asleep. (*Id.*)

As W.H. slept, a flight attendant woke him up and demanded that he exit the aircraft. (*Id.* ¶ 32.) W.H. hurried out of the plane, but returned to retrieve his jacket, which he had left behind. (*Id.* ¶ 33.) "[A]ppearing nervous and scared," the flight attendant also proceeded to ask M.K. to exit the aircraft. (*Id.* ¶ 34.) When W.H. and M.K. asked the flight attendant, "what was going on," she demanded that they exit the aircraft without "questioning anything." (*Id.*) After W.H. and M.K. had exited the plane and were waiting on the bridge, a flight attendant "rushed" to Alam and Anand and demanded, "in a hostile manner," that they also exit the aircraft. (*Id.* ¶¶ 35, 38.) Passengers aboard the flight proceeded to make "bigoted and racist comments," hold "their children and belongings close to their person[s]" and "stare[] in fear and hate" at Alam and Anand. (*Id.* ¶¶ 37-38.) Some passengers "appeared prepared to physically assault Alam," which caused both Alam and Anand to fear for their safety. (*Id.* ¶ 39.) When Alam and Anand asked why they were being removed, they were told by a flight attendant to exit the aircraft "peacefully." (*Id.* ¶

40.) "Humiliated, embarrassed, and scared" Alam and Anand exited the aircraft where they met with W.H. and M.K on the bridge, which was located between the aircraft and the gate. (*Id.* ¶¶ 41, 43.) Unlike Plaintiffs, John Does 1 and 2 were not asked to exit the aircraft. (*Id.* ¶ 42.)

As Plaintiffs waited on the bridge, an "Agent of Defendant" communicated with the captain of the flight at the entrance of the aircraft. (*Id.* ¶ 45.) The captain "shook his head indicating that he was saying 'no'" at the "Agent" who turned to Plaintiffs and demanded that they return to the departure gate. (*Id.* ¶ 46.) Plaintiffs returned to the gate where they were "held there without explanation and until the flight taxied away from the Gate." (*Id.* ¶ 47.) At the gate, an "Agent of Defendant appearing nervous and flustered" informed Plaintiffs that they could not remain on the aircraft because "the crew members and specifically the captain felt uneasy and uncomfortable with their presence on the flight and as such, refused to fly unless they were removed from the flight." (*Id.* ¶ 49.) Plaintiffs asked if their appearance had played a role in the decision, and were told by the "Agent" that their "appearance 'did not help.'" (*Id.* ¶ 50.)

Plaintiffs inquired about what "the next steps" were and were informed that it must be determined if the "next flight crew felt comfortable and safe flying with Plaintiffs" onboard. (*Id.* ¶ 55.) After some time, Plaintiffs were permitted to board the next flight to New York City. (*Id.* ¶ 56.)

On January 18, 2016, Plaintiffs commenced the instant action asserting discrimination claims under both federal and New York State law. (*See* Dkt. Entry No. 1). On March 8, 2016, after Moving Defendants had moved to dismiss the complaint for failure to state a claim, Plaintiffs filed an amended complaint ("Amended Complaint" or "Am. Compl."). (*See generally* Am. Compl.) The Amended Complaint asserted the same five claims as the initial complaint and added three new claims for breach of contract, breach of the implied covenant of good faith and fair

dealing, and for negligence and gross negligence. (Am. Compl. ¶¶ 97-116.) On March 25, 2016, Moving Defendants moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Defs'. Mem.) Moving Defendants contend that dismissal is warranted because Plaintiffs' claims are preempted by the Montreal Convention and the statutes upon which Plaintiff's rely do not apply extraterritorially. (*Id.* at 1-2.) As the Court finds that Plaintiffs' claims are preempted by the Convention, the Court need not reach Moving Defendants' argument that the statutes upon which Plaintiffs rely do not apply extraterritorially.

## **STANDARD OF REVIEW**

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements

5

of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Notably, courts only may consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007).

## DISCUSSION

### Plaintiffs' Claims are Preempted by the Montreal Convention

The Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) ("Montreal Convention" or "Convention"), *reprinted in* S. Treaty Doc. No. 106–45, 1999 WL 33292734 (2000), governs the uniform system of liability for international air carriers. *See Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n. 4 (2d Cir. 2004). The Montreal Convention "replaces the system of liability that derives from the Warsaw Convention." *Id.* Although establishing a new system of liability, "'the Convention still retains many of its original provisions and terms and thus courts have continued to rely on cases interpreting equivalent provisions in the Warsaw Convention.'" *Glassman-Blanco v. Delta Airlines, Inc.*, 2016 WL 5017468, at *3 (E.D.N.Y. Feb. 3, 2016) (quoting *Dogbe v. Delta Air Lines, Inc.*, 969 F. Supp.2d 261, 269 (E.D.N.Y. 2013); *Safa v. Deutsche Lufthansa Aktiengesellschaft, Inc.*, 42 F. Supp.3d 436, 441 (E.D.N.Y. 2014).

The Montreal Convention contains three damages provisions under which carriers may be held liable. *See Seagate Logistics, Inc. v. Angel Kiss, Inc.*, 699 F. Supp.2d 499, 506 (E.D.N.Y. 2010). Article 17 provides for liability for the death or bodily injury of a passenger, if the injury

6

occurred on board the aircraft or in the course of "any of the operations of embarking or disembarking," and for liability if checked baggage is destroyed, lost, or damaged. Montreal Convention, art. 17. Article 18 of the Montreal Convention states that, subject to certain exclusions, a carrier is liable for damage to cargo during carriage by air. *Id.*, art. 18. Finally, Article 19 provides for carrier liability "occasioned by delay in the carriage by air of passengers, baggage or cargo" unless the carrier "proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." *Id.*, art. 19.

Article 29 of the Montreal Convention explains the preemptive nature of the Convention. Article 29 provides, in relevant part, that:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention[.]

Interpreting Article 29's predecessor under the Warsaw Convention, the Supreme Court in *El Al Israel Airlines v. Tseng,* 525 U.S. 155, 175 (1999), held that this provision "precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty." *See also King v. Am. Airlines, Inc.*, 284 F.3d 352, 357 (2d Cir. 2002) ("The Supreme Court in *Tseng* held that the Convention's preemptive effect on local law extends to all causes of action for injuries to persons or baggage suffered in the course of international airline transportation, regardless of whether a claim actually could be maintained under the provisions of the Convention.").

Applying the Warsaw Convention, the Second Circuit has held that "[a]ll state law claims that fall within the scope of the Convention are preempted." *Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 141 (2d Cir. 1998). "Because the two conventions' preemptive language is substantially

7

similar, they have substantially the same preemptive effect." *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp.2d 447, 453 (E.D.N.Y. 2007) (internal citation and quotation marks omitted). Thus, it is well settled that, if one of the Convention's three damage provisions applies, "the Convention provides the sole cause of action under which a claimant may seek redress for his injuries." *Seagate Logistics, Inc.*, 699 F. Supp.2d at 505 (quoting *Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp.2d 361, 365 (S.D.N.Y. 2006)).

Moving Defendants argue that Plaintiffs' five federal and state discrimination claims are preempted by the Convention and explicitly foreclosed by the Second Circuit's decision in *King v. Am. Airlines, Inc.*, 284 F.3d 352 (2d Cir. 2002). (Defs'. Mem. at 7-11.) The Court agrees. In *King*, the plaintiffs asserted that they had been discriminated against racially in violation of § 1981, the FAA, and "various other state and federal laws." *Id.* at 355. The Second Circuit held that, under the Warsaw Convention, plaintiffs' claims were preempted because the plaintiffs "had already checked in for their flight, received their boarding passes, and boarded the vehicle that was to transport them from the terminal to the aircraft." *Id.* at 359. As a result, "the events in question occurred in the course of embarkation" and plaintiffs' "action therefore f[ell] within the substantive scope of Article 17." *Id.* at 358. In *King,* the Second Circuit refused to carve out an exception to the Warsaw Convention's preemption clause for discrimination claims because such an exception "would eviscerate the uniformity that is the animating purpose behind the Convention." *Id.* at 361.

Applying *King*, the Court finds Plaintiffs' five federal and state discrimination claims are preempted by the Convention. The Second Circuit instructed in *King* that, "Article 17 directs [this Court] to consider *when* and *where* an event takes place in evaluating whether a claim for an injury to a passenger is preempted." *Id.* at 360 (emphasis in original). Here, just as in *King*, Plaintiffs had obtained their boarding passes by the time the alleged discrimination occurred. *Compare Id.*

at 359, *with* Am. Compl. ¶ 28.  Moreover, in this case, Plaintiffs concede that, prior to the alleged discriminatory actions by Defendants, "[a]ll passengers [had] boarded the flight, including Plaintiffs[.]"  (Am. Compl. ¶ 29.)  Hence, Plaintiffs' allegations establish that their injuries occurred "while 'in the course of [one of] the operations of embarking' within the meaning of Article 17."  *King*, 284 F.3d at 360.  Accordingly, their federal and state discrimination claims are preempted by the Convention.

While the Second Circuit in *King* applied the Warsaw Convention and not the Montreal Convention, *King* still is binding on this Court and applicable to Plaintiffs' claims.  Article 17 of both the Warsaw Convention and the Montreal Convention contain the identical language that the injury "took place on board the aircraft or in the course of any of the operations of embarking or disembarking."  *Compare King*, 284 F.3d at 358, *with* Convention, art. 17.  Courts in this Circuit are in agreement that, where "terms of the Montreal Convention and the Warsaw Convention are substantively similar . . . the Court may rely on precedent interpreting the Warsaw Convention's parallel provisions when addressing claims under the Montreal Convention."  *Safa*, 42 F. Supp.3d at 441 (collecting cases).  In this case, the Second Circuit's decision in *King* forecloses Plaintiffs' discrimination claims.  Indeed, courts within this Circuit have applied *King's* holding and dismissed discrimination claims as preempted by the Convention.  *See e.g.*, *Kripalani v. AMR Corp.*, 2013 WL 1822777, at *3 (S.D.N.Y. Apr. 30, 2013); *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp.2d 485, 495 (S.D.N.Y. 2009).

Without mentioning *King* in their opposition papers, Plaintiffs attempt to avoid its holding by asserting that their claims are not preempted by the Convention because they are based on "Defendants' failure to perform" a contract and "Defendants discriminatory making and enforcement of a contract[.]"  (Pl.s' Opp'n. at 3-7.)  Plaintiffs principally rely on *Weiss v. El Al*

9

*Israel Airlines, Ltd.*, 433 F. Supp.2d 361, 365 (S.D.N.Y. 2006), where the Court held that claims derived from "bumping" a passenger from a flight "should be read as grounded in a cause of action for non-performance of contract and not delay. They are, therefore, not preempted by the Montreal Convention." *Id.* at 369. *Weiss* is inapposite here.

As an initial matter, *Weiss* addressed the preemptive effect of Article 19 of the Convention and not Article 17, which applies here. *See Id.* at 366. Aside from this crucial distinction, *Weiss* is inapplicable to Plaintiffs' claims because Plaintiffs were not "bumped" from Flight AA44718. As the Court in *Weiss* explained, "[b]umping is an airline industry practice whereby passengers are denied seats due to intentional overselling[.]" *Id.* at 363 n. 3. Here, the Amended Complaint contains no allegations that Plaintiffs were denied seats because the flight was oversold. To the contrary, unlike the passengers in *Weiss*, who were "bumped" when they were "involuntarily denied boarding," *Id.* at 363, and their "reserved seats given to other passengers," *Id.*, Plaintiffs concede that "[a]ll passengers boarded the flight, including Plaintiffs," where the alleged discrimination then occurred. (Am. Compl. ¶ 29.) Additionally, unlike in *Weiss,* there is no allegation that other customers received Plaintiffs' assigned seats. Thus, Plaintiffs were not bumped from Flight AA44718.

Plaintiffs' assertion that their claims are based on Defendants' failure to perform a contract also must fail because Plaintiffs' state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence or gross negligence are preempted by Article 17 of the Convention. "Article 17's 'substantive scope' extends to all 'passenger injuries occurring 'on board the aircraft or in the course of any of the operations of embarking and disembarking'—even if the claim is not actionable under the treaty." *King*, 284 F.3d at 359 (citing *Tseng*, 525 U.S. at 172). In *King*, the Second Circuit recognized that, although "by its terms Article

17 limits recovery to passengers who have sustained 'bodily injury,' the Supreme Court in *Tseng* made clear that this restriction on liability affects neither the analysis of the substantive scope of the provision nor its preemptive effect." *Id.* Here, Plaintiffs concede that the state law claims arise from conduct that occurred while embarking Flight AA44718. (Am. Compl. ¶¶ 32-41, 49.) Article 17 specifically subsumes these claims. As such, they are dismissed. *See Dogbe*, 969 F. Supp.2d at 275; *Obuzor v. Sabena Belgian World Airlines*, 1999 WL 223162, at *2 (S.D.N.Y. Apr. 16, 1999).

Even if Plaintiffs' breach of contract claim were not preempted by Article 17, courts within this Circuit generally agree that a non-performance claim is warranted where the passengers allege that the airlines refused to fly them without offering alternative transportation. *See e.g.*, *Mullaney v. Delta Air Lines, Inc.*, 2009 WL 1584899, at *2 (S.D.N.Y. June 3, 2009); *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp.2d at 454. This is not the case here because Plaintiffs concede that they were permitted to board "the next flight home," which they did. (Am. Compl. ¶¶ 53-56.) Therefore, Plaintiffs cannot assert a claim for non-performance of a contract. *See Fields v. BWIA Int'l Airways Ltd.*, 2000 WL 1091129, at *5 (E.D.N.Y. July 7, 2000) (denying non-performance claim where airline "performed its obligations under the contract (albeit one day late)").

## **CONCLUSION**

For the reasons set forth above, the Court finds that all of Plaintiffs' claims are preempted by the Montreal Convention and Moving Defendants' motion to dismiss the Amended Complaint is granted in its entirety. Moreover, as the claims against the Republic Defendants would be preempted for the same reasons, the claims against them also are dismissed in their entirety.

SO ORDERED.

Dated: Brooklyn, New York
       March 17, 2017

/s/
DORA L. IRIZARRY
Chief Judge